**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ALBERTO BENJAMIN SIBRIAN, | ) | NO. ED CV 18-1090-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Performing duties and functions not reserved to the Commissioner of Social Security, | ) ) ) ) ) | **AND ORDER OF REMAND** |
| | ) | |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on May 23, 2018, seeking review of the Commissioner's denial of benefits. The parties filed a consent to proceed before a United States Magistrate Judge on June 17, 2018.

Plaintiff filed a motion for summary judgment on November 27, 2018. Defendant filed a motion for summary judgment on December 28, 2018. The Court has taken both motions under submission without oral argument. See L.R. 7-15; "Order," filed May 25, 2018.

**BACKGROUND**

Plaintiff, a former forklift operator and heavy material handler, asserts disability since August 15, 2008, based on alleged corneal ulcers of the eyes, obesity, hypertension and depression (Administrative Record ("A.R.") 46, 51-52, 69, 177-83, 205-06). An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 15-29, 37-81).

The ALJ found that Plaintiff suffers from severe obesity, uncontrolled essential hypertension, and loss of visual acuity. See A.R. 17-19 (finding nonsevere Plaintiff's alleged depression). The ALJ found that Plaintiff retains the residual functional capacity for light work, limited to: (1) sitting for six hours in an eight-hour day, and standing and/or walking two hours in an eight-hour day for 30 minutes at a time; (2) occasionally climbing ramps and stairs and balancing; (3) no climbing ladders, ropes or scaffolds, or stooping, kneeling, crouching or crawling; (4) no work requiring fine vision (watch making or repair), no reading of fine print and no harsh lighting; and (5) no work at unprotected heights or around moving mechanical parts. See A.R. 20-27 (giving "substantial weight" to state agency physicians' opinions at A.R. 88-90, 100-103, that Plaintiff is capable of light work with some postural limitations).

The ALJ concluded that Plaintiff was capable of working as a charge account clerk, bench hand and addressing clerk (A.R. 28-29) (purportedly adopting vocational expert testimony at A.R. 69-73).[1] On that basis, the ALJ found Plaintiff not disabled (id.).

In determining Plaintiff's residual functional capacity, the ALJ deemed Plaintiff's subjective complaints "not entirely consistent with the medical evidence and other evidence in the record" (A.R. 21). As detailed below, Plaintiff had testified that his impairments cause limitations of allegedly disabling severity (A.R. 43-68).

The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner,

---

[1] The hypothetical question posed by the ALJ to the vocational expert did not include the preclusion from stooping, kneeling, crouching or crawling that the ALJ found to exist. See A.R. 69-72 (ALJ asking about a hypothetical person who could occasionally stoop, kneel, crouch and crawl). This omission appears to be immaterial, given the Dictionary of Occupational Titles ("DOT") information for the jobs the vocational expert identified. The DOT states that stooping, kneeling, crouching and crawling are "not present" in these jobs. See DOT 205.367-014, 700.687-062, 209.587-010.

3

682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

Plaintiff contends, inter alia, that the ALJ erred in evaluating Plaintiff's statements and testimony concerning the alleged severity of his limitations. See Plaintiff's Motion, pp. 5-9. For the reasons discussed below, the Court agrees.

**I.  Summary of the Medical Record**

The available medical record is relatively sparse, and much of the record consists of treatment notes regarding Plaintiff's

4

eye/vision problems (A.R. 269-71, 278-85, 289, 308, 315-18, 372-73, 378-79). Other records reflect relatively benign examinations. In May of 2014, Plaintiff reportedly had mild lower extremity non-pitting edema on examination (A.R. 272). In August of 2014, when Plaintiff's blood pressure was checked per his doctor's orders, Plaintiff reportedly denied symptoms associated with high blood pressure (e.g. headache, vision changes, chest pain and confusion) (A.R. 290). In November of 2014, Plaintiff reportedly had bilateral pitting edema on examination (A.R. 321).

In April of 2015, Plaintiff presented for follow up for a wound on his buttocks, and he reported that he had lost 50 pounds since January by going to the gym most days and trying to diet (A.R. 326-27). Plaintiff then reportedly weighed 514 pounds (A.R. 326; see also A.R. 323 (January, 2015 note reporting Plaintiff's weight at 547 pounds)). Plaintiff reportedly denied pain or any cardiovascular problems, including peripheral edema (A.R. 326-27).

In May of 2015, Plaintiff reported foot pain at 3 on a scale of 1 to 10 (A.R. 333). Plaintiff then reportedly weighed 497 pounds (A.R. 333). In June of 2015, Plaintiff reported intermittent numbness and loss of grip strength in the right hand dating back approximately one year, which assertedly usually happened in the mornings and resolved during the day (A.R. 336-37). Plaintiff also reported left knee pain with ambulation and back pain at a 7 on a scale of 1 to 10 (A.R. 336-37). Plaintiff said he was still exercising daily and dieting but then weighed 528 pounds (A.R. 336-37). On examination, Plaintiff had no reported abnormal findings, apart from a wound on his buttocks and

a "waddling" gait (A.R. 338-39). He was diagnosed with left knee pain likely related to his obesity, intermittent right hand weakness, possibly related to his sleeping position, and Plaintiff was referred for a weight loss surgery consultation (A.R. 339-40; see also A.R. 342 (normal left knee and cervical spine x-rays)).

In August of 2015, Plaintiff followed up after having surgery to drain the wound to his buttocks (A.R. 347-51). Plaintiff reported knee pain at a 5 on a scale of 1 to 10 (id.). Plaintiff then reportedly weighed 501 pounds (A.R. 351). In November of 2015, Plaintiff reported right knee pain at a 3 on a scale of 1 to 10, and lower back pain for the previous two days at a 4 on a scale of 1 to 10 (A.R. 357-58). Plaintiff then reportedly weighed 489 pounds (A.R. 357). Plaintiff was diagnosed with lumbar strain and prescribed a muscle relaxer (A.R. 360).

In December of 2015, Plaintiff underwent another surgery to drain the wound to his buttocks (A.R. 362). In April of 2016, Plaintiff reported knee and lower back pain at a 5 on a scale of 1 to 10 (A.R. 364-65). He was diagnosed with lumbago (A.R. 366). In September of 2016, Plaintiff returned, reporting sporadic lower back pain at a 4 on a scale of 1 to 10, which Plaintiff said he had experienced for the past three months (A.R. 374-75). Ibuprofen assertedly was not helping (id.). On examination, Plaintiff reportedly had lumbar paraspinal tenderness and weighed 463 pounds (A.R. 374, 376). Plaintiff was prescribed Tramadol for pain (A.R. 376).
///
///

In October of 2016, Plaintiff returned, reporting left knee pain at a 6 on a scale of 1 to 10 and lower back pain at an 8 on a scale of 1 to 10 (A.R. 380-82). Plaintiff had finished physical therapy for his knee and reported that the therapy had not helped (A.R. 382).[2] On examination, Plaintiff had lumbar paraspinal tenderness, positive straight leg raising and positive McMurray testing (A.R. 382). Plaintiff was diagnosed with derangement of the meniscus of the left knee and the Tramadol prescription was continued (A.R. 382-83). In November of 2016, Plaintiff returned, reporting knee and neck pain at a 6 on a scale of 1 to 10, intermittent right hand weakness, and rectal pain (A.R. 388-89, 391). Again, the Tramadol prescription was continued (A.R. 391).

The record contains two opinions by consultative examiners. In a "Complete Psychiatric Evaluation" dated October 31, 2014, a consultative examiner found that Plaintiff has a mood disorder, not otherwise specified, which causes no mental impairments (A.R. 294-99). In a "Complete Orthopaedic Evaluation" dated November 6, 2014, consultative examiner Dr. Herman R. Schoene found that Plaintiff has "extreme morbid obesity" but no functional limits apart from possible vision limitations due to Plaintiff's history of corneal transplant surgery (A.R. 303-07). Plaintiff reportedly had complained of bilateral knee pain, hand pain, chest pain, ankle pain, foot pain, and low back pain (A.R. 303-04). On examination, Plaintiff reportedly

---

[2] A physical therapy treatment note from July of 2016 reported a temporary decrease in left knee pain for five days, which returned when Plaintiff worked out at the gym (A.R. 368). Plaintiff said he had injured his lower back three months earlier while working out at the gym (A.R. 369).

weighed 547 pounds, had a grip strength of up to 35 pounds on the right side and up to 45 pounds on the left side, motor strength, sensation, and reflexes grossly within normal limits, and no reported abnormalities (A.R. 304-06).

As noted above, state agency physicians reviewed the record in December of 2014 and April of 2015, and found Plaintiff capable of light work with some postural limitations (A.R. 82-105).

**II.   Summary of Plaintiff's Testimony and Statements**

At the hearing in April of 2017, Plaintiff testified that he was 5'6" tall and weighed 468 pounds (A.R. 44).  Plaintiff, then 31 years old, lived with his parents and siblings (A.R. 43-44).  Plaintiff had a valid driver's license, but said that he did not drive because he did not have a vehicle and would rather be safe and have his parents or siblings drive him places (A.R. 45, 55).  Plaintiff stopped working in 2008 because he could not see out of his right eye, and he subsequently had a cornea transplant (A.R. 46).  Plaintiff looked for work after his transplant, but said nobody would hire him, most likely because of his weight (A.R. 48).  He said he then would have worked if he had been offered a job (A.R. 48).  Doctors had just recommended that Plaintiff have another cornea transplant in his right eye (A.R. 49).  Plaintiff said he cannot see out of his left eye, which also needs a cornea transplant, but Plaintiff said he would not have surgery on both eyes due to the risks (A.R. 49-50).  Plaintiff's corrected vision was 20/80, which permitted him to read if materials are within nine inches of his face (A.R. 54-55).  Plaintiff said

8

wearing his glasses gives him migraine headaches, for which he takes ibuprofen (A.R. 56).

Plaintiff testified that he has arthritis in his extremities and his weight causes him to have low back pain, joint pain, pain and swelling in his feet, problems bending over and problems doing physical work (A.R. 57-59; see also A.R. 222 (Plaintiff reporting similar issues in a "Function Report - Adult" form)). Plaintiff said that his feet are always swollen, but get worse when he stands (A.R. 64). Plaintiff testified that he has to lie down for 45 minutes to an hour, four to five times each day to relieve pain and edema in his lower extremities (A.R. 58, 61, 65). Plaintiff said he was taking Tramadol and ibuprofen for his pain (A.R. 58, 66). Plaintiff also said that he has numbness in his hands throughout the day, which allegedly prevents him from gripping (A.R. 58-59). Plaintiff estimated that he could stand for 20 to 25 minutes at a time before needing to sit or lie down, sit for 40 minutes at a time before needing to stand up, walk 20 feet before needing to sit down, and lift up to 15 pounds, but with noted difficulty when his hands go numb (A.R. 59-62). Plaintiff estimated that he could last two hours before needing to lie down (A.R. 65). Plaintiff had been at the hearing for "a while," and said that his back, joints and feet were "really hurting" (A.R. 65). Although Plaintiff said he has depression, he also said he was not getting any treatment for it (A.R. 63).

Plaintiff testified that, on an average day, he gets up, helps around the house with chores such as throwing out trash, goes to the gym with a friend where he uses a sauna and steam room, and tries to

walk (A.R. 63-64).  In a "Function Report - Adult - Third Party" form, Plaintiff's mother reported that Plaintiff has no problem with personal care and spends his days watching television, reading, using Facebook, and helping around the house (<u>i.e.</u>, making sandwiches, salads and microwave foods, which takes him between 10 and 25 minutes, and washing dishes, cleaning the kitchen, bathroom and living room, which takes him 25 to 30 minutes), and doing yard work (mowing the lawn) twice a month (A.R. 213-14, 216; <u>see also</u> A.R. 223-24, 226 (Plaintiff reporting similar activities)).  Although Plaintiff did not drive because he did not have a car, he could go out daily and ride in a car, and he could shop in stores once a week for food for approximately 30 minutes (A.R. 215, 225).  Plaintiff reportedly has trouble squatting, bending, standing, walking, kneeling, stair climbing and seeing, with his obesity limiting him to walking approximately 20 feet before needing to rest (A.R. 217, 227).

### III. **The ALJ Erred in Discounting Plaintiff's Testimony and Statements Regarding the Severity of Plaintiff's Symptoms Without Stating Legally Sufficient Reasons for Doing So.**

In assessing Plaintiff's residual functional capacity, the ALJ found that Plaintiff's obesity imposes some limitations on lifting, carrying, pushing, pulling, and some environmental limitations.  <u>See</u> A.R. 26-27.  However, the ALJ rejected Plaintiff's testimony and statements suggesting greater limitations as "not entirely consistent with the medical evidence and other evidence in the record" (A.R. 21).
///
///

Where, as here, an ALJ finds that a claimant's medically determinable impairments reasonably could be expected to cause some degree of the alleged symptoms of which the claimant subjectively complains, any discounting of the claimant's complaints must be supported by "specific, cogent" findings. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must state "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of malingering).³ Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen v. Chater, 80 F.3d at 1284 ("The ALJ must state specifically

---

³ In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. See, e.g., Leon v. Berryhill, 880 F.3d 1041, 1046 (9th Cir. 2017); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014); Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases). In the present case, the ALJ's findings are insufficient under either standard, so the distinction between the two standards (if any) is academic.

which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also Social Security Ruling 16-3p (eff. March 28, 2016).[4]

The ALJ rejected Plaintiff's complaints that he can stand for only 20-25 minutes at a time, carry only 10-15 pounds, and would need to lie down for 45 to 60 minutes. The ALJ rejected these complaints as supposedly not substantiated by the objective medical evidence, reasoning: (a) Plaintiff has made no cardiopulmonary complaints resulting from his obesity; (b) there is no evidence of "any specific or quantifiable impact on pulmonary, endocrine, or cardiac functioning[,] but there is some evidence of impact on [Plaintiff's] musculoskeletal functioning"; (c) although Plaintiff complained of hand pain causing intermittent numbness and loss of grip strength, the consultative examiner found Plaintiff had a grip strength of up to 35 pounds in one hand and 45 pounds in the other, neurological findings showed sensation was normal, and Plaintiff's upper extremity muscle strength reportedly was normal; (d) Plaintiff assertedly had been prescribed only ibuprofen and muscle relaxers for Plaintiff's back pain; (e) Plaintiff's knee pain assertedly decreased with physical therapy; (f) imaging studies of Plaintiff's back and knees allegedly were normal; (g) the orthopedic consultative examiner found Plaintiff

---

[4] Social Security Rulings ("SSRs") are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). SSR 16-3p superseded SSR 96-7p, but may have "implemented a change in diction rather than substance." R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016); see also Treviso v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (suggesting that SSR 16-3p "makes clear what our precedent already required").

had "no functional limits for lifting, carrying, pushing, and pulling despite claimant's musculoskeletal issues with his obesity"; (h) Plaintiff assertedly is able to control his hypertension through medication and has no evidence of end organ damage, stroke, or cardiovascular disease as a result of the hypertension; and (i) Plaintiff's vision allegedly is stable and he assertedly is able to see "reasonably well" with glasses or contacts (e.g., testing showed his corrected vision was 20/50 in one eye and 20/60 in the other) (A.R. 22-26). The ALJ also reasoned that Plaintiff's ability to cook, clean, shop for groceries, do yard work and use Facebook is inconsistent with his claimed limitations (A.R. 21, 27). Finally, the ALJ stated that Plaintiff assertedly testified he does not drive because he does not see well, but Plaintiff reported in a Function Report that he does not drive because he does not own a vehicle (A.R. 21).

The ALJ's stated reasoning is legally deficient. First, to the extent the ALJ stated that Plaintiff's pain treatment involved only ibuprofen, muscle relaxers and physical therapy, the ALJ mischaracterized the record. Consistent with Plaintiff's testimony, the record shows that, in September of 2016, Plaintiff began taking Tramadol, an opioid, for knee and back pain (A.R. 66, 376). An ALJ's material mischaracterization of the record can warrant remand. See, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999).

To the extent the ALJ purported to rely on the objective medical evidence, an ALJ "may not discredit the claimant's testimony as to the

13

severity of symptoms merely because they are unsupported by objective medical evidence." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted); see Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("lack of medical evidence" can be "a factor" in rejecting credibility, but cannot "form the sole basis"). Here, because the ALJ's other stated reasons for discounting Plaintiff's testimony fail, the ALJ cannot properly rely on a claimed lack of medical evidence to discount Plaintiff's statements and testimony.

The ALJ also purported to rely on asserted inconsistencies between Plaintiff's admitted daily activities and his subjective testimony and statements. Inconsistencies between a claimant's admitted activities and claimed incapacity properly may impugn the accuracy of a claimant's testimony and statements under certain circumstances. See, e.g., Thune v. Astrue, 499 Fed. App'x 701, 703 (9th Cir. 2012) (ALJ properly discredited pain allegations as contradicting claimant's testimony that she gardened, cleaned, cooked, and ran errands); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" was sufficient explanation for discounting claimant's testimony). However, it is difficult to reconcile certain Ninth Circuit opinions discussing when a claimant's daily activities properly may justify a discounting of the claimant's testimony and statements. Compare Stubbs-Danielson v. Astrue with Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

14

any way detract from her credibility as to her overall disability"); see also Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017) (daily activities of cooking, household chores, shopping and caring for a cat insufficient to discount the claimant's subjective complaints).

In the present case, the Court finds that Plaintiff's limited admitted activities – activities he reportedly did for only up to 30 minutes at a time and which could accommodate Plaintiff's reported need to lie down four to five times a day – are not so extensive as properly to undermine Plaintiff's credibility. See Revels v. Berryhill, 874 F.3d 648, 667-68 (9th Cir. 2017) (ALJ erred in finding disparity between claimant's reported daily activities and symptom testimony where the claimant indicated she could use the bathroom, brush her teeth, wash her face, take her children to school, wash dishes, do laundry, sweep, mop, vacuum, go to doctor's appointments, visit her mother and father, cook, shop, get gas, and feed her dogs, where the ALJ failed to acknowledge the claimant's explanation consistent with her symptom testimony that she could complete only some tasks in a single day and regularly needed to take breaks). While it appears that Plaintiff reportedly was going to the gym daily beginning as early as January of 2015 (see A.R. 63, 327), the record does not indicate that he performed any activities while at the gym which would be particularly probative of his ability to work (see A.R. 21, 27).

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home

15

activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." Smolen v. Chater, 80 F.3d at 1283 n.7. The record does not reflect that Plaintiff performed activities that would translate to sustained activity in a work setting on a regular and continuing basis for eight hours a day, five days a week. See id. (noting that a claimant's daily activities may detract from symptom testimony where a claimant is able to spend a substantial part of the day performing household chores or other activities transferrable to a work setting) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). There is no material inconsistency between Plaintiff's admitted activities and Plaintiff's alleged incapacity.

The ALJ also purported to discern a possible inconsistency between Plaintiff's testimony and his prior statements. "In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering . . . inconsistencies in [a] claimant's testimony." Burch v. Barnhart, 400 F.3d at 680. Here, the ALJ stated that Plaintiff testified that he did not drive because he does not see well, but previously had reported that he did not drive because he did not own a car (A.R. 21). The ALJ misstated Plaintiff's testimony. Plaintiff testified that he did not drive because he does not have a vehicle and because he would rather be safe and get rides from family members (A.R. 45). There is no material inconsistency between Plaintiff's testimony and his prior statements concerning why he does not drive.
///
///

The Court is unable to conclude that the ALJ's failure to state legally sufficient reasons for discounting Plaintiff's credibility was harmless. "[A]n ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and quotations omitted). For example, the vocational expert testified that, if the hypothetical person required a sit/stand option, such a requirement would preclude work (A.R. 75-76). The vocational expert also testified that, if the hypothetical person required unscheduled work breaks for a cumulative total of four hours a week, such a requirement would preclude work (A.R. 79-80). The vocational expert did not testify there are jobs performable by a person as limited as Plaintiff claims to be (A.R. 69-80).

**IV.  Remand for Further Administrative Proceedings is Appropriate.**

Because the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2010); see Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("Connett") (remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony); but see Orn v. Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (appearing, confusingly, to cite Connett for the proposition that "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony, we remand for a calculation of benefits") (quotations omitted); see also

Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Brown-Hunter v. Colvin, 806 F.3d 487, 495-96 (9th Cir. 2015) (discussing the evidently narrow circumstances in which a court will order a benefits calculation rather than further proceedings); Ghanim v. Colvin, 763 F.3d 1154, 1166 (9th Cir. 2014) (remanding for further proceedings where the ALJ failed to state sufficient reasons for deeming a claimant's testimony not credible); Vasquez v. Astrue, 572 F.3d 586, 600-01 (9th Cir. 2009) (agreeing that a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Treichler v. Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases").

///
///
///
///
///
///
///
///
///

**CONCLUSION**

For all of the foregoing reasons,[5] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 26, 2019.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.